**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                                Plaintiff,

                            5:20-cv-1628 (BKS/ML)

v.

MCLANE/EASTERN, INC., *doing business as* McLane
Northeast,

                                Defendant.

**Appearances:**

*For Plaintiff:*
Rebecca F. Izzo, Trial Attorney
Equal Employment Opportunity Commission
300 Pearl Street, Suite 450
Buffalo, NY 14202

Renay M. Oliver, Trial Attorney
Nora E. Curtin, Assistant Regional Attorney
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

*For Defendant:*
Christopher J. Harrigan
Arianna E. Kwiatkowski
Benjamin M. Wilkinson
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), brings this action against Defendant McLane/Eastern, Inc., doing business as McLane Northeast ("McLane"), asserting a claim for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (the "ADA"), as amended. (Dkt. No. 1). Plaintiff alleges that Defendant violated the ADA by failing to interview and hire Shelley Valentino, a woman who is deaf, because of her disability. (*See generally id.*). The case is set for trial to begin on September 5, 2023. Presently before the Court are the parties' motions in limine. (Dkt. Nos. 64, 65, 77). The Court heard oral argument on the motions at the final pretrial conference on August 22, 2023. For the following reasons, the parties' motions are granted in part and denied in part.

**II.     PLAINTIFF'S MOTIONS IN LIMINE**

   **A.      Valentino's Subsequent Employment History**

Plaintiff seeks an award of backpay from the time of Defendant's alleged discrimination in March 2018 to the end of September 2019. Plaintiff moves to preclude any evidence of Valentino's employment history after she obtained employment in October 2019 as irrelevant. (Dkt. No. 77-1, at 3). Defendant does not oppose this request. (Dkt. No. 79-3, at 5 n.1). The Court therefore denies this portion of Plaintiff's motion in limine as moot.

   **B.      Valentino's Receipt of Supplemental Security Income**

Plaintiff moves to preclude evidence of Valentino's receipt of Supplemental Security Income ("SSI") and argues that any award of backpay should not be offset by those benefits. (Dkt. No. 77-1, at 4–5). Defendant responds that any award of backpay should be offset by Valentino's SSI benefits and that evidence of those benefits is relevant and admissible. (Dkt. No.

79-3, at 5–8). At the final pretrial conference, the parties confirmed that they consent to trying the issue of lost wages, an equitable remedy under the ADA, to the jury. *See* Fed. R. Civ. P. 39(c)(2) (providing that a court "may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right"). The parties also agreed that the question of whether Valentino's SSI benefits should be deducted from any lost wages award is for the Court to decide and that evidence of Valentino's SSI benefits will not need to be introduced to the jury. In light of the parties' agreement, the Court denies Plaintiff's motion to preclude evidence of Valentino's receipt of SSI benefits at trial as moot, without prejudice to further motion practice on the offset issue in the event of a finding of liability and an award of lost wages.

### C. Other Complaints of Discrimination by Valentino

Plaintiff moves to preclude all evidence of "other instances in which Valentino complained of hiring discrimination" by other companies. (Dkt. No. 77-1, at 6–8). Plaintiff argues that (1) such evidence, if introduced to "portray [Valentino] as someone with a tendency to allege discrimination," is improper character evidence barred by Federal Rule of Evidence 404(b); and (2) the probative value of such evidence, even if introduced for a proper purpose, is outweighed by a danger of unfair prejudice and should be excluded under Federal Rule of Evidence 403. (*Id.*). Defendant responds that evidence of Valentino's allegations of discrimination against other potential employers "will not be offered to show propensity" and is relevant to Valentino's "subjective conclusions regarding whether the conduct alleged on behalf of McLane constituted discrimination." (Dkt. No. 79-3, at 9–11).

At the final pretrial conference, counsel for Plaintiff indicated that Plaintiff seeks to introduce Valentino's testimony that she felt the McLane representative on the TRS call was uncomfortable and seemed confused by the call, and that such testimony is relevant to the chain

3

of events leading to Orr's discriminatory intent and why Valentino filed a charge with the EEOC. Defense counsel argued that evidence of Valentino's complaints of discrimination by other companies is relevant to Valentino's frame of mind, attitude about the TRS call, and motivation for pursuing a charge against McLane.

First, to the extent Defendant seeks to introduce evidence of other complaints of discrimination to prove Valentino's motivation for pursuing a charge against McLane, such evidence of Valentino's motivations is irrelevant to the issues in this case. *See Samsung Elecs. Co., Ltd. v. NVIDIA Corp.*, No. 14-cv-757, 2016 WL 754547, at *2, 2016 U.S. Dist. LEXIS 22799, at *6–7 (E.D. Va. Feb. 24, 2016) (noting the "general rule" that "a plaintiff's motive for bringing suit is irrelevant, except in the face of certain equitable defenses, bad faith, or questions of witness bias" and collecting cases); *see also UMB Bank, N.A. v. Sanofi*, No. 15-cv-8725, 2017 WL 6398628, at *2, 2017 U.S. Dist. LEXIS 202622, at *5–6 (S.D.N.Y. Nov. 22, 2017) (quashing subpoenas seeking information that might "bring to light" the parties' "motives for asserting their legal rights and bringing litigation to enforce the contract at issue" because "[m]otive is not an element in a breach of contract suit").

To the extent Defendant seeks to introduce evidence of Valentino's complaints of discrimination against other companies for overall context and as probative of Valentino's frame of mind in perceiving she had been discriminated against, the Court concludes that any probative value of such evidence is substantially outweighed by a danger of confusing the issues or misleading the jury. Fed. R. Evid. 403; *see also United States v. King*, No. 14-cr-102S, 2016 WL 7045937, at *2, 2016 U.S. Dist. LEXIS 166828, at *4–5 (W.D.N.Y. Dec. 2, 2016) (precluding reference to unrelated civil suits because "introducing evidence of the unrelated suits would invite a trial within the trial as to the merits of each suit"). Accordingly, the Court grants

Plaintiff's motion to preclude evidence of other instances in which Valentino complained of hiring discrimination by other companies.

### D. Evidence that Orr Is a Cancer Survivor

Plaintiff moves to preclude evidence that Orr is a cancer survivor and considers herself to be disabled, arguing that Orr's status as a cancer survivor "has no bearing on this case" and has the potential to improperly appear to the jury's sympathies. (Dkt. No. 77-1, at 9). Defendant responds that Orr's status as a cancer survivor and self-identification as a person with a disability is "relevant to her lack of a discriminatory bias towards others with disabilities." (Dkt. No. 79-3, at 11–12).

The Court concludes that evidence of Orr's status as a cancer survivor and that she considers herself "disabled and/or regarded as disabled," (Dkt. No. 77-5, at 3; *see also* Dkt. No. 77-4, at 6 (McLane position statement noting that Orr, as a cancer survivor, is "disabled or has a record of a disability")), is relevant to the question of Orr's discriminatory motivation. "It is a well-settled, albeit not dispositive, principle that where the alleged discriminator is a member of the same protected class as Plaintiff, an inference against discrimination exists and claims of discrimination become less plausible." *Meyer v. N.Y. Office of Mental Health*, 174 F. Supp. 3d 673, 687–88 (E.D.N.Y. 2016) (collecting cases). Given its direct relevance to a key element of Plaintiff's claim, such evidence does not present a danger of unfair prejudice which substantially outweighs its probative value under Rule 403. Plaintiff may request an appropriate limiting instruction.

Accordingly, the Court denies Plaintiff's motion to exclude evidence that Orr is a cancer survivor and regards herself as disabled.

### III. DEFENDANT'S MOTIONS IN LIMINE

Defendant moves to preclude (1) the transcript of the Telecommunications Relay Service ("TRS") call made by Valentino to McLane on March 12, 2018, and (2) the "Sprint Materials," which non-party Sprint Corporation (now T-Mobile US, Inc.) produced in response to a subpoena. (Dkt. No. 64-5, at 14–29).[1] After the parties' filed their motions in limine, Plaintiff informed the Court that Sprint is "not able to identify the author of" the Training Scripts portion of the Sprint Materials but would be willing to produce a witness for deposition. (Dkt. No. 84). The Court discussed with the parties at the final pretrial conference the possibility of deposing a Sprint representative or calling a Sprint representative to testify at trial. The parties are working to resolve what a Sprint representative could testify to and will advise the Court of their positions. Although the Court therefore has insufficient information to rule entirely on Defendant's motion at this time, the Court addresses certain issues raised by that motion.

#### A. TRS Call Transcript

Defendant first moves to preclude the TRS call transcript, arguing that (1) the transcript cannot be properly authenticated, (2) the "explaining relay" statement attributed to the call operator is hearsay, (3) the statements made by the unidentified McLane representative are hearsay and do not qualify as party-opponent statements, and (4) allowing the transcript into evidence would unfairly prejudice Defendant. (Dkt. No. 64-5, at 14–21).

---

[1] Defendant also moves to preclude non-party witness Abraham Parsons, a former McLane employee, from "testifying in any respect about his 'stroke-like syndrome'" because such testimony "relates to legal theories completely different from those in this case" and is therefore irrelevant. (Dkt. No. 64-5, at 29–31). Plaintiff informed the Court at the final pretrial conference that Plaintiff no longer intends to call Mr. Parsons at trial or use his deposition testimony. This portion of Defendant's motion is therefore denied as moot.

      **1.**      **Authentication**

Defendant first argues that Valentino cannot authenticate the TRS transcript because she did not create the document and because "she has no personal knowledge on which to rely to state that the transcript accurately reflects the contents of the TRS call with McLane." (*Id.* at 14–17). Defendant further notes that there is no evidence regarding "the process by which the TRS transcript was generated, or that the process produced an accurate result." (*Id.*). Plaintiff responds that Valentino can authenticate the transcript by virtue of her personal knowledge of the conversation that took place during the TRS call. (*See* Dkt. No. 81, at 3–9).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication under Rule 901 "does not erect a particularly high hurdle," *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 344 (2d Cir. 2004) (citation omitted), and may be accomplished with testimony of a witness with knowledge "that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1). Here, Valentino is a witness with knowledge that the TRS transcript is what she communicated and what she saw while the call was in progress. However, it does not appear that Valentino can authenticate the transcript as an accurate depiction of what the McLane representatives said on the call to the operator. It appears that testimony from a Sprint representative regarding matters such as operators' obligation to faithfully transcribe what a call recipient says and training, and the ability of a caller to generate a transcript from the Sprint website may help authenticate the TRS transcript. *See generally* 47 C.F.R. § 64.604 (setting forth mandatory minimum standards for communications assistants, including that they "must relay all conversation verbatim unless the relay user specifically requests summarization").

Accordingly, the Court reserves ruling on Defendant's objection to the authenticity of the TRS call transcript until after the Court has received the parties' submission regarding Sprint testimony.

### 2. "Explaining Relay"

Defendant next argues that the statement "(explaining relay)" appearing in the TRS transcript is inadmissible as hearsay. (Dkt. No. 64-5, at 17–18). Plaintiff does not dispute that the statement is an out-of-court statement asserted offered to prove the truth of the matter asserted but argues that the statement falls into the present sense impression exception to the rule against hearsay. (Dkt. No. 81, at 9–10).

Under the present sense impression exception, a statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not barred by the rule against hearsay. Fed. R. Evid. 803(1). Although the Court is waiting for the parties' submission regarding the testimony from a Sprint representative, it appears that the operator's statement that the operator was "explaining relay" to the recipient of the call is a statement describing or explaining an event—the explanation of the service—which the operator made while or immediately after doing so. Thus, although the Court is not ruling at this time, it appears likely that the "explaining relay" statement is not inadmissible hearsay.

### 3. Statements of Unidentified McLane Representative

Defendant argues that the statements in the TRS transcript attributed to an unidentified McLane employee should not be admitted into evidence because those statements do not qualify as party-opponent statements under Rule 801(d)(2) and are therefore inadmissible hearsay. (Dkt. No. 64-5, at 18–21). Defendant argues that, because the McLane representative has not been identified, there is "not a sufficient foundation for the Court to determine whether Rule 801(d)(2) applies." (*Id.* at 20). Plaintiff responds that the statements are admissible as party-opponent

8

statements and that the fact that the employee is unidentified does not render the statements inadmissible. (Dkt. No. 81, at 11–15).

A statement which "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). To establish a "sufficient foundation to support the introduction of vicarious admissions" under Rule 801(d)(2)(D), a party must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Leser v. U.S. Bank Nat'l Ass'n*, No. 09-cv-2362, 2012 WL 6738402, at \*4, 2012 U.S. Dist. LEXIS 182975, at \*9–10 (E.D.N.Y. Dec. 29, 2012) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). The statements themselves "are not alone sufficient" to establish these foundational predicates. *See id.*; Fed. R. Evid. 801(d)(2). However, "admissibility under this rule should be granted freely." *Pappas*, 963 F.2d at 537.

The Court concludes that Plaintiff has laid a sufficient foundation to support the introduction of the unidentified McLane representative's statements as party-opponent statements under Rule 801(d)(2)(D). Although the second McLane representative on the TRS call is unidentified, there is sufficient circumstantial evidence indicating that this individual was in fact a McLane employee and that the individual made the statements at issue during the course of the employment relationship on a matter within the scope of that relationship. First, Plaintiff has proffered evidence that Valentino called McLane's main phone number during business hours. (*See* Dkt. No. 46-2, at 113; Dkt. No. 64-1, at 2 (TRS transcript listing phone number)). After "Sara with claims customer service" answered the call, the call was transferred to another individual who answered by saying: "Afternoon how can [I] help you[?]" (Dkt. No. 64-1, at 2).

When Valentino advised the individual that she was calling in regards to a job application, the individual expressed knowledge about the company's normal hiring practices ("normally we just call[]"), expressed knowledge of Orr's whereabouts ("right now she has a couple team[m]ates with her"), and took a message ("I will have Ann[e] call or email")). (*Id.*). Because Valentino called McLane's main phone number during business hours, there is sufficient evidence that the unidentified McLane representative was an employee of the company and that the representative's statements related to a matter within the scope of agency, i.e., fielding phone calls and taking a message.

Moreover, contrary to Defendant's argument, the fact that the representative has not been identified does not necessarily mean there is an insufficient foundation for the statements to qualify as party-opponent statements. *Cf. Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238–39 (E.D.N.Y. 2007) (finding it more likely than not that an unidentified declarant was a Pathmark employee and that the other requirements of Rule 801(d)(2)(D) were met where the individual "wore a Pathmark name tag" and there was evidence that maintenance employees were required to "walk up and down the aisles" and "maintenance [wa]s always on the floor"); *Williams v. Bethel Springvale Nurson Home, Inc.*, No. 14-cv-9383, 2018 WL 1662644, at *2, 2018 U.S. Dist. LEXIS 58319, at *5 (S.D.N.Y. Apr. 5, 2018) ("[T]he Second Circuit has allowed various admissions from unidentified individuals where other evidence establishes the scope as well as the existence of the agency relationship." (citing *Pappas*, 963 F.2d at 538)). *Farganis v. Town of Montgomery*, on which Defendant relies, does not compel a contrary conclusion. No. 06-cv-5238, 2010 WL 1781000, 2010 U.S. Dist. LEXIS 42263 (S.D.N.Y. Apr. 29, 2010). There, the plaintiff sued the Town of Montgomery under Title II of the ADA, on the ground that officers who had arrested her were motivated by "discriminatory animus or ill will due to her

10

disability." *Id.*, 2010 WL 1781000, at *1 2010 U.S. Dist. LEXIS 42263, at *2. The trial court excluded testimony from the plaintiff's husband about two calls he allegedly received from an unidentified Town police officer using the plaintiff's confiscated cell phone. *Id.*, 2010 WL 1781000, at *2–3, 2010 U.S. Dist. LEXIS 42263, at *5–8. On the plaintiff's motion for a new trial, the trial court again concluded that the testimony was "properly excluded," noting that the issue at trial was whether "any of the officers *involved in plaintiff's arrest* were motivated by discriminatory animus or ill will" and therefore that the "admissibility of the testimony at issue hinged on the identification of the caller." *Id.*, 2010 WL 1781000, at *3, 2010 U.S. Dist. LEXIS 42263, at *8–9. In other words, without evidence that the declarant was one of those officers involved in the plaintiff's arrest, the testimony was irrelevant. *Id.*

Accordingly, the Court rejects Defendant's argument that statements of the unidentified McLane representative could not be admissible as party-opponent statements under Rule 801(d)(2)(D).

### 4. Unfair Prejudice

Finally, Defendant argues that the Court should exclude the TRS transcript because its probative value is substantially outweighed by a danger of unfair prejudice to McLane. (Dkt. No. 64-5, at 21); *see* Fed. R. Evid. 403. Defendant argues that admitting the "explaining relay" statement "would result in the jury engaging in impermissible speculation in an attempt to ascertain what that explanation entailed." (*Id.*). Although the transcript indicates that there was some explanation of what a TRS call is, there is no evidence as to what that explanation contained. Defendant notes that it would result in unfair prejudice to "link" the "explaining relay" statement to "announcements" and "explanations" in the Sprint training materials which appear to give operators discretion to decide whether to state that the caller is deaf or hard of hearing. At the final pretrial conference Plaintiff appeared to agree that it would not attempt to

11

do so. In any event, the Court reserves ruling on Defendant's Rule 403 objection until after the Court receives the parties' submission regarding Sprint testimony.

### B. Sprint Materials

Defendant also moves to preclude the "Sprint Materials," arguing that there is no foundation for the admission of the two possible "Announcements" and "Explanations" (the "Training Scripts"), which are also hearsay; the Sprint Materials are irrelevant; and the Sprint Materials would confuse the jury and unfairly prejudice McLane. (Dkt. No. 64-5, at 22–29).[2]

In response to a subpoena asking for "Sprint IP Relay policies and practices" in effect in March 2018 relating to "Sprint IP Relay operators' introductory explanation of Telephone Relay Service ('TRS') calls to recipients of such TRS calls," Sprint indicated that operators "are trained to announce a call with a scripted explanation of service before the call begins." (Dkt. No. 64-3, at 3). Sprint provided in its response "a guided training response for IP Relay Operators announcing and explaining relay services." (*Id.*). Although "[f]lexibility is allowed with the service explanation," "the 'Everything that is heard will be typed to them' phrase is required." (*Id.*). The "guided training response" provided by Sprint includes two different "announcements" and two different "explanations." It reads:

> Announcement
>
> Hello. A person is calling you through an internet relay service. This is Operator XXX. Have you received an internet relay call before?
>
> Hello. A person who is deaf or hard of hearing is calling you through an internet relay service. This is Operator XXX. Have you received an internet relay call before?
>
> Explanation
>
> The person on the line is using a free internet service to communicate with you. The caller is typing their conversation,

---

[2] The "Sprint Materials" also include phone records produced by Sprint. Defense counsel confirmed at the final pretrial conference that Defendant has no objection to the introduction of the phone records to show that a call was made to McLane.

12

> which will be read to you. When you hear the words "Go Ahead" it will be your turn to speak. Please speak directly to the caller. Everything that is heard will be typed to them. One moment for your call to begin.
>
> The person who has called you is deaf or hard of hearing. The caller will type their conversation and I will read it to you. When you hear the words "Go Ahead" it is your turn to speak, and I will type everything heard. Please speak directly to the caller and say "Go Ahead" when you are ready for a response. One moment for your call to begin.

(*Id.*).

Defendant argues that the Training Scripts contain hearsay, because each "Announcement" and "Explanation" qualifies as an out of court statement that Plaintiff offers for the truth of the matter asserted, "*i.e.* that the Sprint operator informed McLane that Ms. Valentino was deaf." (Dkt. No. 64-5, at 28–29). Plaintiff responds that (1) the "Announcements" and "Explanations" are not being offered for the truth of the matter asserted but to demonstrate "that some instruction was given" which informed the McLane representative that the representative was receiving a TRS call, and (2) alternatively, the Training Scripts are admissible under the residual exception to the rule against hearsay. (Dkt. No. 82, at 11–16).

As an initial matter, the Court concludes that the answers Sprint provided in response to the subpoena are out of court statements which Plaintiff offers to prove the truth of the matter asserted therein. Specifically, Plaintiff is introducing the Training Scripts as proof that (1) "Relay Operators are trained to announce a call with a scripted explanation of service before the call begins," (2) the "Announcements" and "Explanations" listed are a "guided training response" for operators, and (3) "[f]lexibility is allowed" in the explanation but the operator must explain that everything the operator hears will be typed to the person placing the TRS call. (*See* Dkt. No. 64-3, at 3). Thus, the Training Scripts must fall within an exclusion or exception to the rule against hearsay to be admissible. *Cf. In re Swift*, 496 B.R. 89, 96–97 (E.D.N.Y. 2013) (holding that an

13

individual's "information subpoena response" was inadmissible hearsay and "wholly unsubstantiated by any other evidence").

Plaintiff initially argued in opposition to Defendant's motion that the Training Scripts should be admitted under the residual exception to the rule against hearsay. However, because Plaintiff subsequently learned that "Sprint was not able to identify the author" of the Training Scripts, it withdraws that argument. (Dkt. No. 84, at 1 & n.1). Thus, the Court concludes that the Training Scripts are inadmissible hearsay and grants Defendant's motion to preclude them. The Court will issue a separate ruling on the admissibility of any testimony by a Sprint representative after the Court receives the parties' submissions regarding testimony by Sprint.

### IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 77) and Defendant's motion in limine (Dkt. Nos. 64, 65) are **GRANTED in part** and **DENIED in part** as set forth above.

**IT IS SO ORDERED.**

Dated: August 23, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge