**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                            Plaintiff,

v.

MCLANE/EASTERN, INC., *doing business as* McLane
Northeast,

                            Defendant.

5:20-cv-1628 (BKS/ML)

**Appearances:**

*For Plaintiff:*
Rebecca F. Izzo
Trial Attorney
Equal Employment Opportunity Commission
300 Pearl Street, Suite 450
Buffalo, NY 14202

Renay M. Oliver
Trial Attorney
Nora E. Curtin
Assistant Regional Attorney
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

*For Defendant:*
Christopher J. Harrigan
Arianna E. Kwiatkowski
Benjamin M. Wilkinson
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff, the United States Equal Employment Opportunity Commission, brings this action against Defendant McLane/Eastern, Inc., doing business as McLane Northeast, asserting a claim for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (the "ADA"), as amended. (Dkt. No. 1). Plaintiff alleges that Defendant violated the ADA by failing to interview and hire Shelley Valentino, who is deaf, because of her disability. (*See generally id.*). The case is set for trial to begin on November 27, 2023. Presently before the Court is Defendant's motion in limine dated October 30, 2023, (Dkt. No. 97), as well as part of Defendant's motion in limine dated August 1, 2023, (Dkt. Nos. 64–65), which the Court lacked sufficient information to rule on in its Decision dated August 23, 2023, (Dkt. No. 87). For the following reasons, the Court reserves ruling on the remaining disputed issues in Defendant's motions in limine until trial.

## II.     DEFENDANT'S MOTIONS IN LIMINE

### A.      TRS Transcript

In its motion in limine dated August 1, 2023, (Dkt. Nos. 64–65), Defendant moved, *inter alia*, to preclude the transcript of the Telecommunications Relay Service ("TRS") call made by Ms. Valentino to Defendant on March 12, 2018, arguing that (1) the transcript cannot be properly authenticated; (2) the "explaining relay" statement attributed to the call operator is hearsay; (3) the statements made by the unidentified Defendant representative are hearsay and do not qualify as party-opponent statements; and (4) allowing the transcript into evidence would unfairly prejudice Defendant. (Dkt. No. 64-5, at 14–21). The Court rejected Defendant's third argument but reserved ruling on the remaining issues until after the Court received the parties'

submission regarding Sprint testimony. (Dkt. No. 87, at 6–12). The Court has received the parties' submission and now addresses these issues.

Defendant originally argued that Ms. Valentino cannot authenticate the TRS transcript because she did not create the document and because "she has no personal knowledge on which to rely to state that the transcript accurately reflects the contents of the TRS call with [Defendant's representative]." (Dkt. No. 64-5, at 14–17). Defendant further noted that there is no evidence regarding "the process by which the TRS transcript was generated, or that the process produced an accurate result." (*Id.*). Plaintiff responded that Ms. Valentino can authenticate the transcript by virtue of her personal knowledge of the conversation that took place during the TRS call. (*See* Dkt. No. 81, at 3–9).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication under Rule 901 "does not erect a particularly high hurdle," *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 344 (2d Cir. 2004) (citation omitted), and may be accomplished with testimony of a witness with knowledge "that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1). The Court previously noted that Ms. Valentino is a witness with knowledge that the TRS transcript is what she communicated and what she saw while the call was in progress, but that it did not appear that Ms. Valentino can authenticate the transcript as an accurate depiction of what Defendant's representative said on the call to the operator. (Dkt. No. 87, at 7).[1] However, Plaintiff has now identified Barbara Garcia as a Sprint representative who can testify regarding Sprint TRS users'

---

[1] The Court also noted that the ability of a caller to generate a transcript from the Sprint website may help authenticate the TRS transcript. (*Id.*).

ability to preserve a transcript of a call and operators' obligation to transcribe verbatim in real time. (*See* Dkt. No. 96, at 2); *see generally* 47 C.F.R. § 64.604 (setting forth mandatory minimum standards for communications assistants, including that they "must relay all conversation verbatim unless the relay user specifically requests summarization"). Defendant has now "consented to the potential testimony regarding the authentication of the TRS transcript." (Dkt. No. 97-1, at 9). Accordingly, the Court need not address the authentication of the TRS transcript further.

### B.    Testimony of Barbara Garcia

Defendant moves to preclude testimony by Ms. Garcia regarding the training Sprint provided to TRS operators, arguing that such testimony would (1) be irrelevant; (2) confuse the jury and unfairly prejudice Defendant; and (3) contain inadmissible hearsay. (*Id.* at 5–16). Specifically, Defendant moves to preclude Ms. Garcia from testifying that operators were trained to (1) "announce a call with a scripted explanation of service"; (2) "tell the call recipient that an individual was calling them through an internet relay service, to identify their Operator Number, and to ask whether the recipient has received a relay call before"; (3) "tell the recipient of the call that when they heard the words, 'Go Ahead,' it was their turn to speak and that when they were finished speaking, they should say 'Go Ahead' when they were ready for a response"; and (4) "say the phrase, 'Everything that is heard will be typed to them [the TRS caller].'" (*Id.* at 10–11 (alteration in original)).

### 1.    Ms. Garcia

Plaintiff has identified Ms. Garcia as a "Sprint (now T-Mobile) employee" who is "a Product Manager for IP Relay"—"the service through which Shelley Valentino made the TRS call at issue." (Dkt. No. 98, at 3). Ms. Garcia "works on the business side for IP Relay," "has supported the IP Relay product since 2011," and works "closely with product engineers" in

"identifying and resolving issues with the IP Relay Product." (*Id.*). As Defendant notes, Plaintiff has not provided any description of how Ms. Garcia is familiar with the training Sprint provided to TRS operators. (Dkt. No. 97-1, at 11 n.2). Under Rule 602, a witness "may testify only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Therefore, Plaintiff must lay a foundation sufficient to establish that Ms. Garcia has personal knowledge of the training Sprint provided to TRS operators.

### 2.    Relevance

Defendant argues that Ms. Garcia's proposed testimony is irrelevant because "she has no personal knowledge of what transpired on the call that Ms. Valentino allegedly made to [Defendant] via TRS" or of "the particular training that was offered to the operator that handled Ms. Valentino's call." (Dkt. No. 97-1, at 11). Plaintiff responds that Ms. Garcia "is a foundational witness who can provide helpful context to the jury about TRS calls and help authenticate the TRS transcript." (Dkt. No. 98, at 4). Plaintiff notes that "[w]e know from the transcript that the operator gave some explanation of TRS" and that "[m]ost jurors will likely have no familiarity with TRS." (*Id.*).

Assuming Plaintiff lays a proper foundation for Ms. Garcia's testimony regarding the training Sprint provided to TRS operators, her lack of specific personal knowledge of Ms. Valentino's call or the training provided to the operator who handled Ms. Valentino's call does not prevent her from testifying as to training she does have personal knowledge of. *See Belabbas v. Inova Software Inc.*, No. 16-cv-7379, 2019 WL 13258045, at *2, 2019 U.S. Dist. LEXIS 248841, *6–7 (S.D.N.Y. Oct. 1, 2019) (allowing a witness to testify as to those of the defendants' employment practices she had personal knowledge of).

To determine the permissible scope of proof at trial, the Court looks to the relevance and admissibility standards in Rules 401, 402, and 403 and the elements Plaintiff is required to prove

to establish its ADA claim. Rule 401 provides that "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. In general, relevant evidence is admissible. Fed. R. Evid. 402; *see United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) ("Evidence is relevant when 'it has any tendency to make a fact more or less probable than it would be without the evidence,' . . . and, unless an exception applies, all '[r]elevant evidence is admissible.'" (alteration in original) (quoting Fed. R. Evid. 401, 402)). However, Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Claims of disability discrimination brought pursuant to the ADA are subject to the burden-shifting standard set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009). Under this framework, a plaintiff must first establish a prima facie disability discrimination claim, which requires showing that (1) the employer is subject to the ADA; (2) the individual allegedly discriminated against "is disabled within the meaning of the ADA or perceived to be so by her employer"; (3) the individual "was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"; (4) the individual suffered an adverse employment action; and (5) the adverse action was imposed "because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)); *see also Natofsky v. City of New York*, 921 F.3d 337, 348 (2d

Cir. 2019) (holding that an ADA plaintiff must prove that "the discrimination was the but-for cause of any adverse employment action.").

Therefore, to succeed on its disability discrimination claim, Plaintiff must establish, *inter alia*, a causal connection between Ms. Valentino's disability and any adverse employment action by Defendant. Some of the proposed testimony would appear to assist the jury in understanding the transcript of the call. Specifically, assuming that an adequate foundation is laid, testimony that operators in 2018 were "trained to tell the recipient of the call what when they heard the words, 'Go ahead,' it was their turn to speak, and that when [the recipients] were finished speaking they should say 'Go Ahead' when they were ready for a response" would appear to be admissible to help the jury understand the transcript, which includes the words "Go Ahead." (Dkt. No. 98, at 4-5; Dkt. No. 46-2, at 134). So too, for testimony that operators were trained to say "everything that is heard will be typed to" the TRS caller. (*Id.*) And testimony that operators in 2018 "were trained to tell the call recipient that an individual was calling them through an internet relay service . . . and to ask whether the recipient has received a relay call before," (Dkt. No. 98, at 4), could make more probable Defendant's knowledge that Ms. Valentino had some hearing disability at the time it decided not to interview or hire her in March 2018.[2, 3]

---

[2] In denying Defendant's earlier motion for summary judgment, the Court explained at length how a reasonable factfinder could conclude that Defendant had knowledge of Ms. Valentino's disability at the time it decided not to interview or hire her in March 2018. (*See* Dkt. No. 48, at 12–15). Ms. Garcia's testimony could support the necessary inferences.

[3] Defendant also argues that "Ms. Garcia's proposed testimony contains multiple instances of inadmissible hearsay." (Dkt. No. 97-1, at 15–16). To be sure, Ms. Garcia may not simply recite the Training Scripts previously deemed inadmissible hearsay. (Dkt. No. 87, at 12–14). However, assuming Plaintiff lays a proper foundation, it is unclear how Ms. Garcia's proposed testimony—based on her personal knowledge—regarding the training Sprint provided to TRS operators is inadmissible hearsay. Indeed, courts routinely admit testimony from employees' regarding the training provided by their employers. *See, e.g., Floyd v. City of New York*, 813 F. Supp. 2d 417, 453–54 (S.D.N.Y. 2011) (considering, *inter alia*, the testimony of numerous police officers regarding the training provided by the New York City Police Department).

Thus, assuming an adequate foundation is laid, Ms. Garcia's testimony regarding "go ahead" and "everything that is heard will be typed" is relevant and admissible to help the jury understand TRS and the TRS transcript. And since knowledge of Ms. Valentino's disability is central to this case, the Court finds that the probative value of testimony that TRS operators are trained by Sprint to refer to the internet relay service is not substantially outweighed by any risk of undue prejudice.

The parties dispute whether Ms. Garcia may testify regarding whether in 2018 operators "were trained to announce a call with a scripted explanation of service before the call began." (Dkt. No. 98, at 4). Plaintiff says that Ms. Garcia will not "read the [] 'Announcements' and 'Explanations' scripts that were included in the Sprint Materials that the Court has excluded," and will only "state, from her own knowledge, what operators are trained to do at the outset of every call." (*Id.* at 6). Plaintiff also states that it "will instruct Ms. Garcia that she is prohibited from stating that operators are trained to and sometimes state that the person calling is deaf or hard of hearing." (*Id.* at 6, 8). But Plaintiff has not identified the substance of Ms. Garcia's proposed testimony regarding a scripted explanation and, absent that, any discussion of that issue will have to await trial.

## III.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Court will rule on the remaining disputed issues in Defendant's motion in limine dated October 30, 2023, (Dkt. No. 97), as well as the remaining part of Defendant's motion in limine dated August 1, 2023, (Dkt. Nos. 64–65), at trial.

**IT IS SO ORDERED.**

Dated: <u>November 15, 2023</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge